# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PC CONNECTION, INC. d/b/a CONNECTION, | ) ) ) |
| Plaintiff | ) )   Civil Action No. 1:22-cv-00397 |
| v. | ) ) ) |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | )   The Honorable Joseph N. Laplante ) ) ) |
| Defendant. | ) |

## IBM'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Dated: December 05, 2022

Respectfully Submitted,

International Business Machines Corporation,

By Its Attorneys,

/s/ Robert R. Lucic

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #269462)
Jonathan R. Voegele (NH Bar #270529)
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
(603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com
jvoegle@sheehan.com


Anne McClain Sidrys (admitted pro hac vice)
Paul M. Cozzi (admitted pro hac vice)
Kirkland & Ellis LLP
300 N LaSalle
Chicago, IL 60654
asidrys@kirkland.com
paul.cozzi@kirkland.com

**Page(s)**

**Page**

INTRODUCTION.................................................................................................... 1

BACKGROUND ..................................................................................................... 3

ARGUMENT .......................................................................................................... 5

I.      CONNECTION'S BREACH OF CONTRACT CLAIM (COUNT I)
         SHOULD BE DISMISSED ON SEVERAL GROUNDS. ............................... 5

      A.    Connection Does Not Allege A Viable Breach Of Contract Claim Under
           New York Law................................................................................... 6

      B.    The Statute Of Limitations Bars Connection's Breach Of Contract Claim. ........... 9

II.    CONNECTION'S CLAIM FOR CONTRACTUAL INDEMNIFICATION
        (COUNT II) SHOULD BE DISMISSED. ..................................................... 10

III.   CONNECTION'S CLAIM FOR BREACH OF DUTY OF GOOD FAITH
        AND FAIR DEALING (COUNT III) SHOULD BE DISMISSED. ............................ 10

IV.   THE PROFESSIONAL NEGLIGENCE CLAIM (COUNT IV) FAILS
        BECAUSE CONNECTION DOES NOT ALLEGE AN INDEPENDENT
        LEGAL DUTY. ....................................................................................... 11

V.    CONNECTION'S FRAUD-BASED CLAIMS (COUNTS V-VII) FAIL FOR
        MULTIPLE REASONS. ........................................................................... 13

      A.    Connection Cannot Maintain Fraud-Based Claims Alongside Its Breach
           Of Contract Claim................................................................................. 13

      B.    Connection Does Not Plead Its Fraud-Based Claims With The Requisite
           Particularity........................................................................................ 17

      C.    Connection Does Not Allege Actionable Misrepresentations Of Fact. ............... 19

VI.   CONNECTION'S FRAUDULENT INDUCEMENT CLAIM (COUNT V)
        FAILS FOR ADDITIONAL REASONS. ...................................................... 21

VII.  CONNECTION FAILS TO ALLEGE CONDUCT THAT SATISFIES THE
        NHCPA. ................................................................................................ 22

CONCLUSION ..................................................................................................... 23

ii

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*,
    No. 19-CV-7800, 2021 WL 1177532 (S.D.N.Y. Mar. 29, 2021) ...........................................16

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)...........................................................................................................14

*Aktas v. JMC Dev. Co.*,
    877 F. Supp. 2d 1 (N.D.N.Y. 2012) .............................................................................................15

*Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*,
    No. 18-CV-4903, 2019 WL 3066328 (S.D.N.Y. July 12, 2019) .............................................14

*B & M Linen, Corp. v. Kannegiesser*,
    679 F. Supp. 2d 474 (S.D.N.Y. 2010)..........................................................................................20

*B.C.F. Oil Ref. v. Consolidated Edison Co.*,
    982 F. Supp. 302 (S.D.N.Y. 1997) ...............................................................................................7

*Blackhawk Dev., LLC v. Krusinski Constr. Co.*,
    No. 19-cv-5590, 2021 WL 1225917 (S.D.N.Y. Mar. 31, 2021)..............................................6

*Bos. Consulting Grp., Inc. v. NCR Corp.*,
    No. 19-cv-10156, 2020 WL 5731963 (S.D.N.Y. Sept. 24, 2020) ..........................................10

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996)...............................................................................................................13

*Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*,
    557 F. Supp. 3d 381 (E.D.N.Y. 2021) .........................................................................................16

*City of New York v. Black & Veatch*,
    No. 95-cv-1299 (LAP), 1997 WL 624985 (S.D.N.Y. Oct. 6, 1997) .......................................7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..........................................................................................................20

*Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
    70 N.Y.2d 382 (1987) .....................................................................................................................11

*Countrywide Home Loans, Inc. v. United Gen. Title Ins. Co.*,
    109 A.D.3d 953 (2013) ...................................................................................................................12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
No. 13-cv-3075, 2015 WL 13931932 (E.D.N.Y. June 26, 2015) .........................................7, 8

*Davis v. Avvo, Inc.*,
345 F. Supp. 3d 534 (S.D.N.Y. 2018)......................................................................................20

*DH Cattle Holdings Co. v. Smith*,
195 A.D.2d 202 (1994) ............................................................................................................19

*Dobisky v. Rand*,
248 A.D.2d 903 (1998) ..............................................................................................................7

*Dormitory Auth. v. Samson Constr. Co.*,
30 N.Y.3d 704 (2018) ..............................................................................................................13

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996) ......................................................................................................6

*DynCorp v. GTE Corp.*,
215 F. Supp. 2d 308 (S.D.N.Y. 2002)......................................................................................16

*Ely-Cruikshank Co. v. Bank of Montreal*,
81 N.Y.2d 399 (1993) ................................................................................................................9

*ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*,
50 A.D.3d 397 (2008) ..............................................................................................................19

*Financial Guar. Ins. Co. v. Putnam Advisory Co.*,
No. 12 Civ. 7372, 2020 WL 264146 (S.D.N.Y. Jan. 17, 2020)................................................21

*Franchi v. New Hampton Sch.*,
656 F. Supp. 2d 252 (D.N.H. 2009) .........................................................................................23

*Gallup v. Summerset Homes, LLC*,
82 A.D.3d 1658 (2011) ..............................................................................................................8

*Galvin v. EMC Mortg. Corp.*,
No. 12-cv-320, 2013 WL 1386614 (D.N.H. Apr. 4, 2013) .....................................................13

*Genius Media Grp. Inc. v. Google LLC*,
No. 19-cv-7279, 2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020) .............................................10

*Glover v. Bob's Disc. Furniture, LLC*,
No. 20-cv-10924, 2022 WL 3353454 (S.D.N.Y. Aug. 12, 2022) ..............................................6

*GMA Accessories, Inc. v. ePartners Inc.*,
No. 07 CIV. 8414, 2008 WL 781188 (S.D.N.Y. Mar. 19, 2008) .............................................10

iv

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Goodman Mfg. Co. L.P. v. Raytheon Co.*,
  No. 98 CIV. 2774, 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999) ............................................8

*Gutarts v. Fox*,
  104 A.D.3d 457 (2013) ...........................................................................................................7

*GWG MCA Cap., Inc. v. Nulook Cap., LLC*,
  No. 17-CV-1724, 2019 WL 1084777 (E.D.N.Y. Mar. 7, 2019)............................................14

*Hatteras Enterprises, Inc. v. Forsythe Cosm. Grp., Ltd.*,
  No. 15-CV-5887, 2022 WL 3682270 (E.D.N.Y. Aug. 25, 2022) ..........................................13

*Hindsight Solutions, LLC v. Citigroup Inc.*,
  53 F. Supp. 3d 747 (S.D.N.Y. 2014).....................................................................................22

*ILKB, LLC v. Singh*,
  No. 20-CV-4201, 2021 WL 3565719 (E.D.N.Y. Aug. 12, 2021) .........................................20

*InSync Training, LLC v. Am. Soc'y for Training & Dev., Inc.*,
  No. 21-CV-594, 2022 WL 1105065 (D.N.H. Apr. 13, 2022).................................................18

*Jacobs v. Lewis*,
  261 A.D.2d 127 (1st Dep't 1999) ..........................................................................................20

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
  29 F.4th 118 (2d Cir. 2022) ..................................................................................................10

*Johnson v. Nextel Commun's, Inc.*,
  660 F.3d 131 (2d Cir. 2011).................................................................................................21

*Koagel v. Ryan Homes, Inc.*,
  167 A.D.2d 822 (1990) ..........................................................................................................20

*Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*,
  No. cv-14-1095, 2016 WL 11264722 (E.D.N.Y. Aug. 12, 2016) ........................................6, 8

*Langlais v. Brenner-Currier*,
  561 F. Supp. 3d 103 (D.N.H. 2020).......................................................................................17

*Leach v. Hanscom Bakery Corp.*,
  156 Misc. 1 (Mun. Ct. 1935)...................................................................................................7

*Longo v. Butler Equities II, L.P.*,
  278 A.D.2d 97 (2000) ............................................................................................................19

*MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*,
  191 F. Supp. 2d 407 (S.D.N.Y. 2002)....................................................................................15

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007)..................................................................7

*Micronics Filtration Holdings, Inc. v. Miller*,
No. 18-CV-303, 2018 WL 4845749 (D.N.H. Oct. 4, 2018) .....................................22

*Mill-Run Tours, Inc. v. Windstream Servs. LLC*,
No. 16-cv-7052, 2017 WL 2930932 (S.D.N.Y. July 7, 2017)...................................6

*Moody v. PennyMac Loan Servs., LLC*,
No. 16-CV-021, 2018 WL 10812614 (D.N.H. Mar. 27, 2018) ..............................18

*Mosaic Caribe, Ltd. v. AllSettled Grp., Inc.*,
117 A.D.3d 421 (2014) ..................................................................16

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
567 F.3d 8 (1st Cir. 2009)..................................................................17, 18

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Monarch Payroll, Inc.*,
No. 15-CV-3642, 2016 WL 634083 (S.D.N.Y. Feb. 17, 2016).................................16

*New York City Educ. Const. Fund v. Verizon New York Inc.*,
114 A.D.3d 529 (2014) ..................................................................6

*Orlander v. Staples, Inc.*,
No. 13-cv-703, 2014 WL 2933152 (S.D.N.Y. June 30, 2014) .................................7

*Ortiz v. Sig Sauer, Inc.*,
No. 19-cv-1025, 2022 WL 1008340 (D.N.H. Apr. 1, 2022) ..................................8

*Priv. Jet Servs. Grp., Inc. v. Sky King, Inc.*,
No. 05-cv-98, 2006 WL 2864057 (D.N.H. Oct. 4, 2006)....................................23

*Renaissance Hous. Dev. Fund Corp. v. Phoenix Const., Inc.*,
136 A.D.3d 605 (2016) ..................................................................8

*Resnick v. Lebovitz*,
28 A.D.3d 533 (2006) ..................................................................7

*Robinson v. Deutsche Bank Tr. Co. Americas*,
572 F. Supp. 2d 319 (S.D.N.Y. 2008) ....................................................22

*Rodi v. S. New England Sch. Of L.*,
389 F.3d 5 (1st Cir. 2004)..................................................................17

*Saunders v. First Magnus Fin. Corp.*,
No. 17-CV-27, 2018 WL 3432721 (D.N.H. July 16, 2018) ..................................17

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*,
  383 F. Supp. 2d 428 (S.D.N.Y. 2003).......................................................................22

*Stafford v. Int'l Harvester Co.*,
  668 F.2d 142 (2d Cir. 1981)........................................................................................7

*Sussman Sales Co., Inc. v. VWR Int'l, LLC*,
  No. 20 CIV. 2869, 2021 WL 1165077 (S.D.N.Y. Mar. 26, 2021) .........................10

*T & N PLC v. Fred S. James & Co. of New York*,
  29 F.3d 57 (2d Cir. 1994).............................................................................................9

*Traub v. Cornell Univ.*,
  No. 94-cv-502, 1998 WL 187401 (N.D.N.Y. Apr. 15, 1998)...................................7

*Volt Elec. NYC Corp. v. A.M.E., Inc.*,
  586 F. Supp. 3d 262 (S.D.N.Y. 2022).......................................................................12

*W. Valley KB Venture, LLC v. ILKB LLC*,
  No. 20-CV-3278, 2021 WL 4171918 (E.D.N.Y. Sept. 13, 2021) ...........................19

*Xerox State & Loc. Sols., Inc. v. Xchanging Sols. (USA), Inc.*,
  216 F. Supp. 3d 355 (S.D.N.Y. 2016).......................................................................10

*Yanes v. Ocwen Loan Servicing, LLC*,
  No. 13-cv-2343, 2015 WL 631962 (E.D.N.Y. Feb. 12, 2015) .................................6

**Statutes**

N.Y. Prac., Contract Law § 5:11................................................................................21

**Rules**

F.R.C.P 9(b) ...........................................................................................17, 18, 22, 23

F.R.C.P. 12(b)(6) ..........................................................................................................23

Defendant International Business Machines Corp. (IBM) respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint of PC Connection, Inc. (Connection).

## INTRODUCTION

In 2011, IBM and Connection entered into the IBM Customer Agreement (Agreement) that covered future business transactions for Connection to purchase machines, license programs, and other services from IBM. Ex. 1, Agreement p. 1. The Agreement provides that each business transaction will have its own "Transaction Document" that includes specific terms governing that transaction. *Id.* at § 1.2. The business transaction at issue here relates to services IBM performed to assist Connection with an enterprise-wide implementation of upgraded software. The corresponding contract, or Transaction Document, is the August 2017 Statement of Work for the JDE Upgrade Project (SOW). Ex. 2, SOW. That contract is at the center of this dispute.

Despite the fact that Connection accuses IBM of breaching the SOW and committing fraud in performance of its contractual obligations, Connection does not attach the SOW to its Complaint. Upon review of the SOW it becomes obvious why it did not. The SOW, *governed by New York law*,[1] includes a number of provisions that not only undercut, but bar, Connection's claims. By way of example, in Count I Connection claims that IBM breached the SOW by failing to fulfill its contractual obligations. Compl. ¶¶ 92-101. In support of its claim, Connection lists a number of alleged contract breaches, without cites to the SOW. The reader is left to figure out what contract provisions, if any, Connection is referring to. Once that exercise is complete, it is clear that the ***only*** alleged breached obligations relate to warranty provisions in the SOW. But,

---

[1]   Ex. 1, Agreement §§ 1.14, 1.2 (stating New York law applies unless the SOW provides a conflicting choice of law provision; here it does not).

under well-established New York law, warranty obligations cannot form the basis of a breach of contract claim when, as here, the contract is one for services. *See infra* I (A). Thus, in light of the plain language of the SOW, Connection's breach of contract claim fails.

In addition, once viewed through the lens of the SOW, Connection's fraud-based claims fail as a matter of law. Under New York law, a fraud-based claim survives alongside a breach of contract claim only if the plaintiff alleges a legal duty, a misrepresentation extraneous to the contract, or special damages. In comparing Connection's fraud claims to the SOW, it is evident that the fraud claims are not distinct from the contract and thus require dismissal under New York law. *See infra* V (A). The SOW further undercuts Connection's fraud claims in that two of its heavily relied on allegations—that IBM misrepresented the out-of-box (vanilla) software was suitable for Connection's needs and that IBM would complete the project in seventeen months at a cost of $9.2 million—are inconsistent with the language of the SOW. *See e.g.*, Compl. ¶¶ 11, 45, 46, 126, 136, 146. The actual language of the SOW states:

- Connection's objective ***and*** IBM's implementation philosophy are to leverage the standard (vanilla) capabilities of the applications. Ex. 2, SOW pp. 7, 8, 11 (emphasis added).

- "***Both parties*** acknowledge that the ***expected*** cost of this project is ***estimated*** at $9.2M. ***Both parties*** understand that the ***objective*** is to complete this project with this ***estimated*** timeline and budget, and ***both parties*** will use commercially reasonable efforts to do so." *Id.* at p. 5 (emphasis added); *see also id.* at p. 31 (Estimated Schedule); *id.* at p. 32 (Charges).

Connection also fails to mention that the SOW includes a general merger clause that makes its reliance on pre-contract oral and written statements to support its fraudulent inducement claim unreasonable under New York law. *Id.* at p. 39; *see also infra* VI.

By not attaching the SOW to its Complaint, Connection is also able to ignore a critical aspect of the project: that is, the SOW is not a typical contract where a customer pays an entity a fixed fee to perform services. Rather, under the SOW, IBM was retained to perform services and

manage the project **with** Connection.  The SOW is replete with references to *joint* responsibilities, *joint* decision making, and the companies working *collaboratively* on the project.  *See, e.g.*, Ex. 2, SOW p. 5 ("Connection and IBM will control the project scope"); *id.* at p. 20 ("IBM and Connection will collaborate to provide ongoing Project management"); *see also* general highlights in SOW.  The contract put in place a joint IBM/Connection project team to manage the project and establish "tight controls and reviews" to ensure the project was progressing as planned.  *Id.* at p. 5; *id.* at 32 (setting forth an "IBM/Connection team structure" with both IBM and Connection personnel listed in each area of the project organization).  Indeed, an entire section of the SOW (spanning ten pages) sets forth in detail the "IBM and Connection Responsibilities."  That section required Connection to *either* be "Responsible" for a contract task *or* to "Assist" IBM in the task.  *Id.* at pp. 19-29.  Under the SOW, Connection also had its own responsibilities and its team members were required to "actively participate" in the project.  *Id.* at pp. 23, 29; *see also* Ex. 2, SOW highlights.

Why does this matter?  Because Connection alleges (1) a breach of contract claim based solely on nonactionable warranty obligations; (2) fraud claims that sound in contract; (3) fraudulent inducement by means of pre-contract statements not included in the SOW; and (4) that it was defrauded by IBM for tasks the contract required *Connection* to be responsible for, or to assist in.  The SOW not only matters but, in conjunction with New York law, dooms Connection's entire Complaint.

## BACKGROUND

Connection supplies specialized IT products and services.  Compl. ¶ 25.  Prior to IBM's involvement, Connection had as its enterprise resource planning (ERP) platform a JD Edwards (JDE) software system that managed the company's business processes and functions.  *Id.* at ¶¶ 28-29.  On August 7, 2017, Connection retained IBM to provide "professional services to assist

Connection" in upgrading its ERP solution to the newer JDE 9.2 software platform, referred to as "EnterpriseOne" or "E1."  Ex. 2, SOW p. 4; Compl. ¶ 43.  As mentioned above, the SOW was unique in that the contractual obligations and responsibilities fell jointly on IBM and Connection. *See id*. SOW highlights.  In addition, the SOW was a time and materials contract, meaning that IBM did not receive a fixed fee for work performed, but was paid an hourly rate for a set number of hours worked by its team members.  *Id.* at § 2.5, p. 31 (Completion Criteria: "IBM will have fulfilled its obligations under the SOW when…IBM provides the number of hours of Services specified…."); *id.* at pp. 22, 32-33 (Charges: "Services will be conducted on a time and materials basis" and including a table of required hours to be performed).

Several provisions in the SOW and Agreement are relevant to this motion:

- **Joint Management/Assessment/Decision-Making.**  There are numerous provisions in the SOW requiring Connection and IBM to work together to manage, assess and make decisions regarding the project.  *See, e.g.*, Ex. 2, SOW p. 20 ("IBM and Connection will collaborate to provide ongoing Project management"); *id.* at p. 17 ("Throughout the course of the project Connection support team will be actively engaged and obtain knowledge transfer from IBM and Connection core team prior to go-live"); *see also* Ex. 2 highlights.

- **Joint Responsibilities.**  Under the SOW, IBM and Connection team members were either responsible for project tasks *or* were to assist the other company in performing the tasks. *See, e.g.*, Ex. 2, SOW p. 11 ("design workshops will be conducted collaboratively with both IBM and Connection staff"); *id.* at pp. 19-29 (IBM and Connection Responsibilities); *see also* Ex. 2 highlights.

- **Connection-only Responsibilities.**  The SOW sets forth a number of Connection-only requirements.  *See, e.g.*, Ex. 2, SOW p. 11 ("Connection will provide single point of contact in each functional area for decision-making"); *id.* at § 2.2, p. 18, # 8 ("Connection will be responsible for making timely business decisions to avoid an adverse effect on Project timelines"); *id.* at pp. 29-31 ("Other Connection Responsibilities"); *see also* Ex. 2 highlights ("Connection will be responsible," "Connection will lead," Connection will "actively participate").

- **The SOW timeline and charges were estimates.**  Ex. 2, SOW pp. 31-32 and throughout.

- **Merger Clause.**  The SOW includes a merger clause stating the SOW and the Agreement are the complete agreement and replace any prior oral or written communications, representations, promises, covenants, and commitments between IBM and Connection. Ex. 2, SOW p. 39.

- **Statute of Limitations.**  The Agreement provides that neither party may bring a legal action more than two years after the cause of action arose.  Ex. 1, Agreement § 1.8.

The work on the project commenced in Fall 2017.  Compl. ¶ 57.  The conversion from the JDE World to the JDE E1 system (Go-Live) began on May 15, 2020.  *Id.* at ¶ 67.  Go-Live occurred after the Go-Live Readiness Assessment Document—which measured the readiness of the E1 system—had been prepared.  *Id.* at ¶¶ 62, 65.  While Connection alleges that IBM was responsible for the Go-Live Readiness Assessment Document (*id.*)*,* the SOW makes clear that Connection was responsible for, or was required to assist IBM with, the Go-Live tasks, including the Go-Live Readiness Assessment.  Ex. 2, SOW pp. 26-27 (Deploy Phase 1 includes "various go-live preparatory activities that include end-user training, go-live readiness assessment and the mobilization of the businesses," and identifies Connection as Responsible for, or to Assist in, those activities).

Connection does not allege that it terminated the SOW for cause at any point during its engagement with IBM nor does it allege that it ever sent IBM a notice of breach letter.  On April 25, 2022, the parties entered into a tolling agreement, which expired on September 25, 2022.  On September 30, 2022, Connection filed its Complaint.  For the reasons stated below, Connection's Complaint should be dismissed in its entirety.

## ARGUMENT

## I.   CONNECTION'S BREACH OF CONTRACT CLAIM (COUNT I) SHOULD BE DISMISSED ON SEVERAL GROUNDS.

Connection's breach of contract claim should be dismissed for several reasons.  *First*, Connection's claim relies on warranty provisions, which under New York law, cannot form the

basis of a breach of contract claim when the contract is one for services. *Second*, the contract's two-year statute of limitations bars Connection's breach of contract claim.

### A.   Connection Does Not Allege A Viable Breach Of Contract Claim Under New York Law.

The only contractual obligations that Connection refers to in support of its breach of contract claim are warranty provisions in the SOW.[2]  Compl. ¶¶ 97-98 (alleging IBM breached its express warranties); *compare also* Compl. ¶ 96(b)-(g) *with* Ex. 2, SOW pp. 37-38, #3-4.  However, under well-established New York law, a plaintiff may not base a breach of contract claim on warranty provisions in a contract for services.  *Glover v. Bob's Disc. Furniture, LLC*, No. 20-cv-10924 (JGK), 2022 WL 3353454, at *6 (S.D.N.Y. Aug. 12, 2022) (Koeltl, J.) (dismissing warranty claim and stating "there is no cause of action for breach of warranty in the performance of a service"); *see also Blackhawk Dev., LLC v. Krusinski Constr. Co.*, No. 19-cv-5590 (NSR), 2021 WL 1225917, at *5 (S.D.N.Y. Mar. 31, 2021) (dismissing warranty claim and holding no cause of action for breach of warranty in a services contract); *Mill-Run Tours, Inc. v. Windstream Servs. LLC*, No. 16-cv-7052 (ER), 2017 WL 2930932, at *4 (S.D.N.Y. July 7, 2017) (dismissing warranty claim in contract to perform services); *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. cv-14-1095 (SJF) (AKT), 2016 WL 11264722, at *37 (E.D.N.Y. Aug. 12, 2016) (recommending grant of summary judgment on breach of contract claim based on

---

[2]   Connection does not cite to any other contract provision in support of its breach of contract claim.  Rather, its other supporting allegations are general and non-specific.  *See, e.g.*, Compl. ¶ 96 (a), (b) (alleging IBM did not "[c]omplete its scope of work" or "exercise due care professional in the performance of services").  Under New York law, Connection cannot rely on those types of allegations to state a breach of contract claim.  *New York City Educ. Const. Fund v. Verizon New York Inc.*, 114 A.D.3d 529, 531 (2014) ("In its present state, the amended complaint does not specify which provisions of the ZLDA defendant breached; hence, the ninth cause of action … was correctly dismissed."); *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-cv-2343, 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015) ("Without pleading the terms of the contract or contracts that [plaintiff] relies upon, [the plaintiff's] claim fails."); *see also Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194-95 (1st Cir. 1996) (affirming dismissal of contract claim where "[t]here is no presentation of the terms of a contract").

warranty in a contract for services); *Cutrone v. Mortg. Elec. Registration Sys., Inc*., No. 13-cv-3075 (ENV) (VMS), 2015 WL 13931932, at *6 (E.D.N.Y. June 26, 2015) (dismissing warranty claim in services contract with prejudice); *Orlander v. Staples, Inc.*, No. 13-cv-703 (NRB), 2014 WL 2933152, at *8 (S.D.N.Y. June 30, 2014) (dismissing warranty claim in services contract); *Gutarts v. Fox,* 104 A.D.3d 457 (2013) (same); *Resnick v. Lebovitz*, 28 A.D.3d 533, 534 (2006) (same); *Dobisky v. Rand*, 248 A.D.2d 903, 905 (1998) (same); *Traub v. Cornell Univ*., No. 94-cv-502 (RSP/GJD), 1998 WL 187401 at *7 (N.D.N.Y. Apr. 15, 1998) (same); *B.C.F. Oil Ref. v. Consolidated Edison Co*., 982 F. Supp. 302, 308 (S.D.N.Y. 1997) (same); *City of New York v. Black & Veatch*, No. 95-cv-1299 (LAP), 1997 WL 624985 at *5 (S.D.N.Y. Oct. 6, 1997) (same); *Stafford v. Int'l Harvester Co*., 668 F.2d 142, 147 (2d Cir. 1981) (same).

The SOW is indisputably a services contract. *See* Ex. 2, SOW p. 4 ("IBM is pleased to present this Statement of Work for professional services to assist Connection" with its enterprise-wide ERP solution); *id.* at p. 6 ("Described within this SOW are the Services to be performed…"); *id.* at p. 18 ("IBM will assign global resources . . . to provide the Services"). Connection alleges the same in its Complaint. *See, e.g.*, Compl. ¶ 1 (IBM to implement a new ERP system); *id.* at ¶¶ 1, 95 (IBM is obligated to design, develop, test and implement). Thus, under New York law, its claim must be dismissed.

Connection cannot circumvent New York law by labeling Count I as a "breach of contract" claim rather than a "breach of warranty" claim. A breach of warranty claim is merely a *type* of contract claim. *See, e.g.*, *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 184-85 (2d Cir. 2007) ("Under New York law, an express warranty is part and parcel of the contract containing it and an action for its breach is grounded in contract."); *Leach v. Hanscom Bakery Corp*., 156 Misc. 1 (Mun. Ct. 1935) (noting that an action for breach of warranty sounds in

contract); *see also Ortiz v. Sig Sauer, Inc.,* No. 19-cv-1025-JL, 2022 WL 1008340, at *10 (D.N.H. Apr. 1, 2022) (Laplante, J.) (collecting cases and noting that "breach of warranty claims . . . sound in contract"). Courts routinely reject the argument that a plaintiff can make a nonactionable breach of warranty claim actionable by simply relabeling the title of the claim to breach of contract. By way of example, in *Landtek*, the plaintiff asserted a breach of contract claim in a services contract premised on an allegedly failed warranty commitment. The court granted defendant's summary judgment on the ***breach of contract claim***, concluding that "where the predominant purpose of the transaction is ***service oriented*** and the provision of goods is merely incidental, a ***claim for breach of warranty cannot be sustained***." *Landtek*, 2016 WL 11264722, at *36 (emphasis added); *see also Cutrone*, 2015 WL 13931932, at *11 (dismissing plaintiff's warranty claim *with prejudice* and stating that repleading would not cure the substantive problems with the claim) (emphasis added)).

Not only do courts ignore whether a claim is styled as breach of contract or breach of warranty when a services contract is at issue, but courts disregard the title of the claim when assessing the viability of any contract claim premised on breached warranty provisions. *See, e.g.*, *Renaissance Hous. Dev. Fund Corp. v. Phoenix Const., Inc*., 136 A.D.3d 605, 606 (2016) (holding that plaintiff could not avoid dismissal of its untimely breach of warranty claim by simply re-characterizing it as a breach of contract claim); *Gallup v. Summerset Homes, LLC*, 82 A.D.3d 1658, 1661 (2011) (dismissing contract claim and concluding that, where a statutory limited warranty provision exists, a "breach of contract cause of action . . . is precluded . . . to the extent it is based on the breach of warranty"); *Goodman Mfg. Co. L.P. v. Raytheon Co*., No. 98 CIV. 2774 (LAP), 1999 WL 681382, at *13 (S.D.N.Y. Aug. 31, 1999) ("Under New York law, when a contract specifically disclaims the existence of any such warranties or representations, an action

for *breach of contract* cannot be maintained *based on those warranties or representations*."
(emphasis added)).

Because Connection's breach of contract claim is premised on warranty obligations, Count
I should be dismissed.

### B.   The Statute Of Limitations Bars Connection's Breach Of Contract Claim.

Connection's breach of contract claim also fails because of the contract's two-year statute
of limitations.  *See* Ex. 1, Agreement § 1.8 (stating that neither party may "bring a legal action
more than two years after the cause of action arose").[3]  On April 25, 2022, the parties entered into
a tolling agreement.  The parties' tolling agreement expired on September 25, 2022, at which time
the limitations period began running again.  Connection filed the Complaint five days later on
September 30, 2022.   Thus, any alleged breaches that occurred ***before April 30, 2020***
(April 25, 2022 plus the 5 days Connection waited to file less the 2 year limit) are barred by the
statute of limitations.  *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402-03 (1993)
(noting that "a breach of contract cause of action accrues at the time of the breach even though no
damage occurs until later") (quotations and citations omitted)).  Connection does not allege any
contract breaches within the statute of limitations period and thus its breach of contract claim is
time-barred.

Importantly, under New York law, Connection cannot save its claim by alleging that it did
not discover system defects and deficiencies until after the May 2020 Go-Live.  The law is clear:
"***Knowledge of the occurrence of the wrong*** on the part of the plaintiff is not necessary to start
the Statute of Limitations running in [a] contract [action]."  *Ely-Cruikshank Co*, 81 N.Y.2d at

---

[3]   The Agreement states that its terms apply to other Transaction Documents unless contradicted in those documents.
Ex. 1, Agreement § 1.2.  The SOW does not include a competing statute of limitations provision.  Ex. 2, SOW.

402-03 (emphasis added); *T & N PLC v. Fred S. James & Co. of New York*, 29 F.3d 57, 60 (2d Cir. 1994) ("[T]he Court of Appeals has made clear that neither knowledge of the breach nor cognizable damages are required to start the statute of limitations running at breach.").

Thus, Count I should also be dismissed because Connection's claims are barred by the statute of limitations.

## II.   CONNECTION'S CLAIM FOR CONTRACTUAL INDEMNIFICATION (COUNT II) SHOULD BE DISMISSED.

Under New York law, absent a payment to a third party, a claim for indemnification is "no more than an epithet for recovery of breach of contract" and is nonactionable. *Xerox State & Loc. Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 364 (S.D.N.Y. 2016); *see also Sussman Sales Co., Inc. v. VWR Int'l, LLC*, No. 20 CIV. 2869 (KPF), 2021 WL 1165077 (S.D.N.Y. Mar. 26, 2021) (same); *Genius Media Grp. Inc. v. Google LLC*, No. 19-cv-7279 (MKB), 2020 WL 5553639 at *10 n.5 (E.D.N.Y. Aug. 10, 2020) (same).  Connection does not allege that it made any payments to a third party for which it is entitled to indemnification from IBM.  Accordingly, Connection's contractual indemnification claim (Count II) is not viable under New York law and should be dismissed.

## III.  CONNECTION'S CLAIM FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING (COUNT III) SHOULD BE DISMISSED.

Under New York law, "[a] claim for violation of the covenant [of good faith and fair dealing] survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022); *see also Bos. Consulting Grp., Inc. v. NCR Corp.*, No. 19-cv-10156 (LGS), 2020 WL 5731963, at *5 (S.D.N.Y. Sept. 24, 2020) ("An implied covenant claim is not a valid alternative theory of recovery when it is based on the same allegations as the breach of

contract claim."); *GMA Accessories, Inc. v. ePartners Inc.*, No. 07 CIV. 8414 (LAK), 2008 WL 781188, at *1 (S.D.N.Y. Mar. 19, 2008) (dismissing good faith and fair dealing claim as "entirely redundant of" breach of contract claim where the only allegation was that the breaches of contract "had the effect of depriving plaintiff of the benefits of its bargain").

While phrased somewhat differently, Connection relies on the same allegations to support both its breach of contract and breach of the duty of good faith and fair dealing claims. *Compare* Compl. Count III ¶ 109 *with* Compl. Count I ¶¶ 97-98.  In addition, the relief sought by Connection in Count III is intrinsically tied to damages that flow from the breach of contract and is precisely the same damages sought in its breach of contract claim. *Compare* Compl. ¶ 111 ("As a result of IBM's breaches, Connection has been damaged, and continues to be damaged.") *with* Compl. ¶ 101 ("As a result of IBM's breaches, Connection has been damaged, and continues to be damaged.").[4]

Thus, Connection's breach of good faith and fair dealing claim should be dismissed.

## IV.  THE PROFESSIONAL NEGLIGENCE CLAIM (COUNT IV) FAILS BECAUSE CONNECTION DOES NOT ALLEGE AN INDEPENDENT LEGAL DUTY.

In Count IV, Connection alleges that IBM committed professional negligence.  As a matter of law, this claim survives only if Connection alleges that IBM owed it some legal duty independent of the contract.  *Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. . . .  This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract.").

---

[4]   For the same reasons discussed in I (B), Connection's breach of the duty of good faith and fair dealing claim is barred by the two-year statute of limitations since it is based on the same breach of contract allegations, none of which allegedly occurred prior to April 30, 2020.

Connection alleges no such independent duty.  Rather, Connection alleges the very same duty to support both its breach of contract and professional negligence claims.   In its professional negligence claim, Connection alleges that "IBM had a duty to perform its professional services with the appropriate level of care."  Compl. ¶ 113.  Similarly, in its breach of contract claim, Connection alleges that IBM "failed to exercise due professional care in the performance of its services."  *Id.* at ¶ 96 (a).  A review of the two claims shows just how similar the allegations are. *Compare* Count IV (Professional Negligence) ¶ 114 *with* Count I (Contract) ¶¶ 96-98 (*e.g.*, failing to exercise due professional care in the performance of services; failing to assign appropriately skilled, qualified and experienced persons to work on the Project; failing to deliver services and Deliverables in a timely and professional manner; failing to produce work product and Deliverables free of errors and defects).

Just recently, the Southern District of New York considered and rejected a plaintiff's professional negligence claim based on allegations similar to what Connection alleges here.  *See generally Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262 (S.D.N.Y. 2022).  In *Volt,* plaintiffs claimed that the defendant subcontractor breached the contract by failing to satisfactorily perform contractual duties (electrical work on a building).  *Id.* at 298.  Just like Connection, the plaintiff also brought a negligence claim alleging that the subcontractor failed to "perform its contractual obligations in a good and workmanlike manner" and to properly perform "project management services," resulting in delays and other issues.  *Id.*  The district court held that, because the negligence allegations were "identical" or "virtually identical" to the contract allegations, the "grievances sound[ed] in breach of contract" and the plaintiff lacked a viable negligence claim.  *Id.*; *see also Countrywide Home Loans, Inc. v. United Gen. Title Ins. Co.*, 109 A.D.3d 953, 954 (2013) ("Here, the cause of action sounding in negligence was merely a

restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract.").

In short, Connection has not alleged an independent duty to support its professional negligence claim and Count IV should be dismissed. *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711 (2018) (noting that "merely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim"); *Galvin v. EMC Mortg. Corp.*, No. 12-cv-320-JL, 2013 WL 1386614, at \*9 (D.N.H. Apr. 4, 2013) (dismissing negligence claims where "the only duties the defendants owed . . . were defined by [the] contracts").

## V.   CONNECTION'S FRAUD-BASED CLAIMS (COUNTS V-VII) FAIL FOR MULTIPLE REASONS.

Connection brings three fraud-based claims:  fraudulent inducement (Count V), fraudulent misrepresentation (Count VI) and negligent misrepresentation (Count VII).  These claims fail for a number of reasons.

### A.   Connection Cannot Maintain Fraud-Based Claims Alongside Its Breach Of Contract Claim.

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.* sets forth the standard for when a fraud-based claim can be alleged alongside a breach-of-contract claim under New York law.  98 F.3d 13 (2d Cir. 1996).  In *Bridgestone*, the Second Circuit held that for a fraud claim to survive when there is a corresponding breach of contract claim, a plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* at 20.  When applying New York law, courts consistently apply the *Bridgestone* test to assess the viability of a fraud claim brought with a breach of contract claim.  *See Hatteras Enterprises, Inc. v. Forsythe*

*Cosm. Grp., Ltd.*, No. 15-CV-5887, 2022 WL 3682270, at *13 (E.D.N.Y. Aug. 25, 2022) (applying *Bridgestone* test to fraudulent inducement claim); *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724 (GRB), 2019 WL 1084777, at *8 (E.D.N.Y. Mar. 7, 2019) (applying *Bridgestone* test to fraudulent misrepresentation claim); *Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, No. 18-CV-4903 (JMF), 2019 WL 3066328, at *4 (S.D.N.Y. July 12, 2019) (applying the *Bridgestone* test to negligent misrepresentation claim). Connection's fraud-based claims do not satisfy any of the *Bridgestone* criteria.

*First*, Connection does not allege any independent legal duty to support its fraud claims. Indeed, Connection alleges only that IBM had a duty to disclose information relating to the contract. *See* Compl. ¶¶ 89, 114, 118, 126. However, a duty to disclose arises only where: (i) the parties are in a fiduciary relationship; (ii) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge; or (iii) a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005). Connection does not allege any of these three circumstances and thus has not met the first *Bridgestone* criterion.

*Second*, Connection does not satisfy *Bridgestone's* second criterion because its fraud allegations are not extraneous to the contract, but mirror the parties' contractual obligations.

| Fraud-Based Allegation | Similar Warranty Provision in SOW |
|---|---|
| IBM misrepresented:<br><br>- The results of the Discovery Assessment and its assessment of *Connection's business requirements*. Compl. ¶¶ 118 (a), (b) (Fraudulent Inducement Claim)<br><br>- The *time and cost required* to implement the Upgrade. Compl. ¶¶ 118 (f) | IBM warrants and covenants that:<br><br>- "[I]t has had sufficient opportunity to analyze Connection's *needs and requirements* with respect to the Services and Deliverables, . . . ." |

| Fraud-Based Allegation | Similar Warranty Provision in SOW |
|---|---|
| (Fraudulent Inducement); *id.* at ¶¶ 126 (a), 136 (a) (Fraud and Negligent Misrepresentation)<br><br>• That a vanilla upgrade that leveraged "out of box" software was suitable, and *the extent to which configuration would be required*. Compl. ¶¶ 118 (d), (e) (Fraudulent Inducement); *id.* at ¶¶ 126 (e), 136 (e) (Fraud and Negligent Misrepresentation) | • "[A]nd to determine the *personnel and material resources that IBM shall need to provide*, . . . ."<br><br>• "[A]nd the *processes and procedures that it shall need to employ and follow*, in its performance under this SOW." Ex. 2, SOW p. 37 (Warranty Provision) |
| IBM misrepresented that it had the *knowledge, skill, experience, capabilities and personnel* to successfully undertake the upgrade. Compl. ¶ 118 (c) (FI); *id.* at ¶¶ 126 (b), 136 (b) (Fraud and Negligent Misrepresentation) | IBM warrants and covenants that:<br><br>• "[t]he Services shall be performed and completed . . . by *competent and skilled personnel . . ..*" *Id.* at p. 37 (Warranty Provision) |
| IBM misrepresented its *ability* and willingness to complete the implementation. Compl. ¶ 118 (g) (Fraudulent Inducement) | IBM warrants and covenants that:<br><br>• "it is *capable* in all material respects of providing the Services and Deliverables, and of performing all of its obligations under this SOW . . . ." *Id.* at p. 37 (Warranty Provision) |
| IBM misrepresented that:<br><br>• it properly *managed, planned, designed and tested* the implementation. Compl. ¶¶ 126 (c), (d); *id.* at 136 (c), (d) (Fraud and Negligent Misrepresentation)<br><br>• the system *was ready to go-live*, and the harm and disruption that would occur if the system was not ready. Compl. ¶¶ 126 (f), (g), (h); *id.* at 136 (f), (g), (h) (Fraud and Negligent Misrepresentation) | IBM warrants and covenants that:<br><br>• "the Deliverables and Work Product . . . shall: (a) be free of material or frequent errors or defects; (b) *conform to the applicable specifications* and other requirements of this SOW; . . . ." *Id.* at p. 38 (Warranty Provision)<br><br>• "(c) *perform in accordance with the applicable documentation*." *Id.* (Warranty Provision) |

Where, as here, fraud claims are "firmly rooted" in the contract, a plaintiff does not satisfy the second *Bridgestone* criterion. *MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, 191 F. Supp. 2d 407, 410 (S.D.N.Y. 2002) (noting that plaintiff did not satisfy *Bridgestone*'s second criterion where "the representations squarely addressed contractual obligations"); *see also Aktas v. JMC Dev. Co.*, 877 F. Supp. 1, 23 (N.D.N.Y. 2012) ("Where alleged misrepresentations are squarely

addressed in the contract, they do not give rise to a duty apart from the underlying agreement and therefore, are insufficient to sustain a cause of action for fraud."); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 325 (S.D.N.Y. 2002) ("DynCorp's claims of fraud also are not 'collateral or extraneous to the terms of the parties' agreement,' since the false representations that they allege are the representations and warranties that are provided in Section 2.3 of the Purchase Agreement.").

Connection cannot satisfy the third *Bridgestone* requirement as it does not allege special damages caused by fraud that are unrecoverable as contract damages.  With respect to Count VII (Negligent Misrepresentation), Connection does not allege any special damages.   While Connection seeks punitive damages for its other fraud claims (Counts V and VI), punitive damages are not "special" under the *Bridgestone* standard because they do not result from the alleged fraud. *See Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 397 (E.D.N.Y. 2021) ("Although Plaintiff also seeks punitive damages for his fraud claim that he does not seek for the breach of contract claim, these damages are an insufficient basis to render the fraud claim non-duplicative."); *ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 19-CV-7800, 2021 WL 1177532, at *22 (S.D.N.Y. Mar. 29, 2021) ("[P]unitive damages are, by definition, not caused by fraud and therefore do not count as special damages that would differentiate the fraud claim from the breach of contract claim."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Monarch Payroll, Inc.*, No. 15-CV-3642, 2016 WL 634083, at *6 (S.D.N.Y. Feb. 17, 2016) ("[T]he First Department has held that the inclusion of a prayer for punitive damages is not a sufficient basis to allow a fraud claim that is based on the breach of a contract.") (citing *Mosaic Caribe, Ltd. v. AllSettled Grp., Inc.*, 117 A.D.3d 421 (2014)).  Connection thus cannot satisfy *Bridgestone*'s third and final criterion.

16

Because Connection cannot satisfy any of the *Bridgestone* criteria, its fraud-based claims (Counts V-VII) should be dismissed.

**B.     Connection Does Not Plead Its Fraud-Based Claims With The Requisite Particularity.**

Federal Rule of Civil Procedure 9(b) requires a plaintiff to allege a fraud claim with particularity.  F.R.C.P. 9(b).  The First Circuit reads Rule 9(b) expansively to cover claims "where the core allegations effectively charge fraud," including negligent misrepresentation.  *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009).  Connection's fraud claims do not satisfy Rule 9(b) for several reasons.

*First*, Connection does not plead the "who, what, where, and when of the allegedly false or fraudulent representations" for any of its fraud claims.  *Langlais v. Brenner-Currier*, 561 F. Supp. 3d 103, 107 (D.N.H. 2020).  None of the alleged misrepresentations identify the speaker, the context of the alleged misrepresentation (such as whether it was an oral or written statement), or the date or general timeframe when the alleged misrepresentation was made.  *See* Compl. ¶¶ 118-124, 126-133, 135-141.  Connection's conclusory and non-specific allegations do not satisfy Rule 9(b)'s pleading requirements.  *Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 15 (1st Cir. 2004) (finding alleged misrepresentations "made by an unidentified person at an unnamed place and at an unspecified time" to be "patently inadequate under Rule 9(b)"); *Saunders v. First Magnus Fin. Corp.*, No. 17-CV-27-JL, 2018 WL 3432721, at *7 (D.N.H. July 16, 2018) (Laplante, J.) (dismissing fraud claim where "conclusory assertions" lacked "any of the 'who, what, where, and when'").

*Second*, with respect to the fraudulent inducement and fraudulent misrepresentation claims, Connection does not identify the specific basis for inferring scienter.  *Langlais v. Brenner-Currier*, 561 F. Supp. 3d at 107 (noting that Rule 9(b) requires both "specifying the false statements and by

whom they were made but also identifying the basis for inferring scienter").  Rather, Connection simply alleges that IBM made representations knowing they were false.  Compl. ¶¶ 120, 128.  That is not enough to meet Rule 9(b)'s pleading requirement.  To the contrary, when applying the scienter standard, "courts have uniformly held inadequate a complaint's general averment of the defendant's knowledge of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."  *InSync Training, LLC v. Am. Soc'y for Training & Dev., Inc.*, No. 21-CV-594-JL, 2022 WL 1105065, at *8 (D.N.H. Apr. 13, 2022) (denying fraudulent misrepresentation claim where scienter allegations were made in a "conclusory fashion"); *N. Am. Cath. Educ. Programming Found., Inc.*, 567 F.3d at 13 (dismissing fraud claim where no particulars were pled and where the complaint "nakedly asserted" that the defendant never intended to follow through with its promise); *Moody v. PennyMac Loan Servs., LLC*, No. 16-CV-021-JL, 2018 WL 10812614, at *8 (D.N.H. Mar. 27, 2018) (dismissing fraud claim when plaintiff did not identify any basis to infer that defendant knew the statements were false or misleading when made, and thus did not sufficiently plead scienter).

Thus, for this additional reason, Connection's fraud-based claims (Counts V-VII) should be dismissed as they do not satisfy Rule 9(b).

18

### C.      Connection Does Not Allege Actionable Misrepresentations Of Fact.

Connection's fraud claims also fail because the alleged misrepresentations do not constitute actionable statements of *fact*.  Rather, most (if not all) of the relied-on IBM statements are not facts, but are opinions, estimates, predictions or puffery.

For instance, Connection alleges that IBM misrepresented that the (i) out-of-box "vanilla" software was suitable;[5] and (ii) system was ready to Go-Live.  Compl. ¶¶ 118 (d); 126 (e), (f), (g); 136 (e), (f), (g).  Such expressions of opinion are nonactionable.  *See ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*, 50 A.D.3d 397, 399 (2008) (finding that expressions of opinion are nonactionable); *see also Longo v. Butler Equities II, L.P.*, 278 A.D.2d 97 (2000) ("[A]lleged misrepresentations that the target company was seriously undervalued and could be profitably broken up, and that partnership investors would be 'in and out' in not more than one year, can only be understood as nonactionable expressions of opinion."); *DH Cattle Holdings Co. v. Smith*, 195 A.D.2d 202, 208 (1994) (allegations that investment was "safe" amounted to nonactionable opinion).

Similarly, many of Connection fraud allegations relate to expectations, estimates, or predictions.  *See, e.g.*, Compl. ¶¶ 118, 126, 136 (relying on statements about the *expected cost* and *estimated timeframe* for the project,  and statements that IBM misrepresented the extent of harm and disruption to Connection's business that *would or may occur if* the conversion was implemented too soon).  Courts consistently hold that such predictive language cannot form the basis of a fraud claim.  *W. Valley KB Venture, LLC v. ILKB LLC*, No. 20-CV-3278(JS)(AYS), 2021 WL 4171918, at *8 (E.D.N.Y. Sept. 13, 2021) (concluding that plaintiffs could not rely on

---

[5]      As discussed above, *see* Introduction, Connection misstates the language of the SOW concerning whether the vanilla, "out of the box" software was suitable, and the extent to which configurations would be required.

representations using "predictive language"); *see also ILKB, LLC v. Singh*, No. 20-CV-4201ARRSJB, 2021 WL 3565719, at *7 (E.D.N.Y. Aug. 12, 2021) (noting that the statement that a new franchisee "would generate $27,000/month, and costs would be at or below $25,000/month" did not express "a past or existing fact"); *Koagel v. Ryan Homes, Inc.*, 167 A.D.2d 822, 822 (1990) ("[t]o constitute actionable fraud, the false representation relied upon must relate to a past or existing fact, or something equivalent thereto, as distinguished from *a mere estimate.*").

In addition, a number of Connection's allegations amount to puffery. *See, e.g.*, Compl. ¶¶ 118, 126, 136 (relying on statements that IBM's team was skilled, capable, and willing to perform the project, that IBM was a leading expert, and that IBM had extensive experience). Courts routinely find these kinds of statements to be nonactionable. *See Davis v. Avvo, Inc*., 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (finding representations regarding "level of experience or skill" could "only be subjective" puffery); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("It is well-established that general statements about reputation, integrity, and compliance with ethical norms are unactionable puffery."); *B & M Linen, Corp. v. Kannegiesser*, USA, Corp., 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (finding general statements of superiority, such as promising "top of the line" equipment or "top-notch output" to be nonactionable commercial puffery); *Jacobs v. Lewis*, 261 A.D.2d 127 (1st Dep't 1999) (holding that purported misrepresentations regarding defendant's background expertise and promises "amounted to no more than opinions and puffery or ultimately unfulfilled promises, and in either case were not actionable as fraud.").

Because Connection fails to allege misrepresentations of fact to support its fraud claims, those claims should be dismissed.

## VI.   CONNECTION'S FRAUDULENT INDUCEMENT CLAIM (COUNT V) FAILS FOR ADDITIONAL REASONS.

Connection's fraudulent inducement claim (Count V) also fails because it is barred by the (1) two-year statute of limitations and (2) SOW's merger clause.

A fraudulent inducement claim accrues upon the ***execution of the agreement***, *i.e.* the time the fraud was committed. *See Financial Guar. Ins. Co. v. Putnam Advisory Co*., No. 12 Civ. 7372 (AT), 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020) ("A fraudulent inducement claim accrues when the plaintiff enters into the contract or otherwise completes the act that the fraudulent statements meant to induce.").   Here, the SOW was executed on August 7, 2017, and thus Connection's fraudulent inducement claim is time-barred.

In addition, given that the SOW contains a merger clause, Connection's fraudulent inducement claim fails as a matter of law because Connection cannot allege that it reasonably relied on IBM's pre-contract statements in entering into the contract.   *Johnson v. Nextel Commun's, Inc*., 660 F.3d 131, 143 (2d Cir. 2011) (noting that to state a claim for fraud in the inducement, the plaintiff must allege that it reasonably relied on the misrepresentation).   The SOW's merger clause states that the contract is:

> the *complete* agreement regarding Services, and replace any prior oral or written communications, representations, undertakings, warranties, promises, covenants, and commitments between Connection and IBM regarding the Services.   In entering into this SOW, neither party is relying upon any representation that is not specified in this SOW or the Agreement.  Ex. 2, SOW p. 39 (emphasis added).

When, as here, a merger clause is negotiated by sophisticated parties in a business transaction, courts routinely dismiss fraudulent inducement claims premised on pre-contract oral or written statements not incorporated into the contract.  28 N.Y. Prac., Contract Law § 5:11 (stating a court "may apply a general merger clause to preclude a claim of fraud when the clause is in a contract negotiated by sophisticated business parties in a multimillion-dollar transaction and [when] the

claim is inconsistent with the language, such as the specific recitals, in the contract"); *Hindsight Solutions, LLC v. Citigroup Inc.*, 53 F. Supp. 3d 747 (S.D.N.Y. 2014) (stating a similar rule); *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008) ("New York courts are typically reluctant to consider a plaintiff's reliance upon oral communications reasonable where an agreement has been formalized in writing, with a greater reluctance to do so where the contract contains a merger clause and where the plaintiff is a sophisticated party."); *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 460 (S.D.N.Y. 2003) (concluding that plaintiff failed to allege reasonable reliance on written representations made by defendants).  All of the misrepresentations that Connection alleges in its fraudulent inducement claim relate to pre-contract statements.  Thus, as a matter of law, Connection cannot allege it reasonably relied on those statements in entering into the SOW, and Count V fails for this additional reason.

## VII.   CONNECTION FAILS TO ALLEGE CONDUCT THAT SATISFIES THE NHCPA.

Connection alleges that IBM violated New Hampshire's Consumer Protection Act (NHCPA) by committing unfair and deceptive trade practices in its performance of the contract. In support of this claim, Connection relies on ***the very same*** allegations that it relies on to support its fraud claims.  *Compare* Count VIII *with* Counts VI-VII.  Thus, Connection's NHCPA claim is subject to Rule 9(b)'s heightened pleadings standards.  *Micronics Filtration Holdings, Inc. v. Miller*, No. 18-CV-303-JL, 2018 WL 4845749, at *6 (D.N.H. Oct. 4, 2018) (finding that NHCPA claims that sound in fraud are subject to 9(b) pleading standards) (Laplante, J.).  As discussed in V (B) above, Connection does not plead fraud with the requisite specificity and, therefore, Count VIII should be dismissed for the same 9(b) pleading deficiencies.  *Micronics*, 2018 WL 4845749, at *6 (NHCPA claim may be dismissed on 9(b) grounds with the "same analysis" as other fraud

claims); *see also Franchi v. New Hampton Sch.*, 656 F. Supp. 2d 252, 265–66 (D.N.H. 2009) (Laplante, J.) (holding that "generalized assurances" and "vague statements" do not give rise to NHCPA violations); *Priv. Jet Servs. Grp., Inc. v. Sky King, Inc*., No. 05-cv-98-JD, 2006 WL 2864057, at *5 (D.N.H. Oct. 4, 2006) (same).

## CONCLUSION

For the foregoing reasons, and pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Connection's Complaint should be dismissed in its entirety.

Dated: December 05, 2022                          Respectfully Submitted,

International Business Machines Corporation,

By Its Attorneys,

*/s/ Robert R. Lucic*

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #269462)
Jonathan R. Voegele (NH Bar #270529)
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
(603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com
jvoegle@sheehan.com


Anne McClain Sidrys (admitted pro hac vice)
Paul M. Cozzi (admitted pro hac vice)
Kirkland & Ellis LLP
300 N LaSalle
Chicago, IL 60654
asidrys@kirkland.com
paul.cozzi@kirkland.com

23

<u>CERTIFICATION</u>

     I hereby certify that on December 05, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Robert R. Lucic

Robert R. Lucic